# EXHIBIT

# A

**EXHIBIT A**

**KLINE & SPECTER, P.C.**
By:    Shanin Specter, Esquire
        Michael A. Trunk, Esquire
        Aaron L. Dunbar, Esquire
Attorney I.D. Nos.: 40928/83870/317773
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000

*Filed and Attested by the
Office of Judicial Records
07 OCT 2022 06:06 am
E. HAURIN*

*Attorneys for Plaintiffs*

| | |
|---|---|
| **ZALEIPH WOOTEN** and **TAWANA PATINA REID**, Individually and as Co-Administrators of the Estate of **Z.W., JR.**, a Deceased Minor,<br>1915 N. Fulton Avenue<br>Baltimore, MD 21217<br>     -and-<br>929 Abbott Court<br>Baltimore, MD 21202, respectively,<br><br>        Plaintiffs,<br><br>    v.<br><br>**THE BOPPY COMPANY, LLC**<br>350 Indiana Street, Suite 800<br>Golden, CO 80401<br><br>   -and-<br><br>**WALMART INC.**<br>702 S.W. 8th Street<br>Bentonville, AR 72716<br><br>   -and-<br><br>**ARTSANA U.S.A., INC. d/b/a CHICCO**<br>1826 William Penn Way<br>Lancaster, PA 17601<br><br>   -and-<br><br>**ARTSANA S.P.A. d/b/a ARTSANA GROUP**<br>Via Saldarini Catelli 1<br>Grandate, 22070 Italy<br><br>   -and- | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>OCTOBER TERM, 2022<br><br>CIVIL ACTION NO:<br><br><br>**JURY TRIAL DEMANDED** |

Case ID: 221000594

**ABC COMPANIES I-X**, being a fictitious designation for corporations, manufacturing corporations, professional corporations, professional associations, professional partnerships, and/or other jural entities which are unknown and were involved in the manufacturing, designing, marketing, and/or selling of the Boppy Original Newborn Loungers, Boppy Preferred Newborn Loungers and/or Pottery Barn Kids Boppy Newborn Loungers.

-and-

**JOHN DOES I-X**, being a fictitious designation for persons whose identities and/or actions are unknown who were the actual, apparent or ostensible agents, servants, and/or employees of The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, Walmart Inc., and/or ABC Corporations I-X and who were involved in the manufacturing, designing, marketing, and/or selling of Boppy Original Newborn Loungers, Boppy Preferred Newborn Loungers and/or Pottery Barn Kids Boppy Newborn Loungers,

Defendants.

---

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

**ADVISO**

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Asociacion de Licenciados de Filadelfia
Servicio de Referencia y Informacion
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

Case ID: 221000594

## CIVIL ACTION COMPLAINT

Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., deceased-minor, by and through the undersigned attorneys, Kline & Specter, P.C., hereby demand damages of the above-captioned Defendants upon the causes of action set forth below, and aver as follows:

## PARTIES AND VENUE

1. Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, father and mother of Z.W., Jr., are adult citizens and residents of the State of Maryland, residing at 1915 N. Fulton Avenue, Baltimore, MD 21217 and 929 Abbott Court, Baltimore, MD 21202, respectively.

2. Plaintiffs' decedent, Z.W., Jr., died intestate on ███████████, at the age of ███████ ███████.

3. Plaintiffs' decedent, Z.W., Jr., is survived by his parents, Plaintiffs Zaleiph Wooten and Tawana Patina Reid, the sole beneficiaries of the estate of Plaintiffs' decedent, Z.W., Jr.

4. Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, are the duly appointed Co-Administrators of the Estate of Z.W., Jr., deceased, certificate having been issued on September 8, 2022, by the Register of Wills for Baltimore City, Maryland.

5. At all relevant times hereto, Defendant, The Boppy Company, LLC, was a corporation and/or other jural entity duly incorporated, organized, and operating under the laws of the State of Colorado, with a principal place of business at 350 Indiana Street, Suite 800, Golden, CO 80401.

6. At all relevant times hereto, Defendant, Artsana, U.S.A., Inc. d/b/a Chicco, was a corporation and/or other jural entity duly incorporated, organized, and operating under the laws of the State of New Jersey, with a principal place of business at 1826 William Penn Way, Lancaster, PA 17601.

7.     At all relevant times hereto, Defendant, Artsana S.p.A. d/b/a Artsana Group, was a corporation and/or other jural entity duly incorporated, organized, and operating under the laws of Italy, with a principal place of business at Via Saldarini Catelli 1 Grandate 22070, Italy.

8.     At all relevant times hereto, Defendant, Walmart Inc., was a corporation and/or other jural entity duly incorporated, organized, and operating under the laws of the State of Delaware, with a principal place of business at 702 S.W. 8th Street, Bentonville, AR 72716.

9.     At all relevant times hereto, Defendant ABC Companies I-X (said names being fictitious) were corporations, professional corporations, professional associations, professional partnerships, and/or other jural entities responsible for the manufacture, design, marketing, and/or sale of the Boppy Original Newborn Loungers, Boppy Preferred Newborn Loungers and/or Pottery Barn Kids Boppy Newborn Loungers (hereinafter, the "Boppy Loungers").

10.     At all relevant times hereto, Defendant John Does I-X (said names being fictitious), were the actual, apparent or ostensible agents, servants, and/or employees of The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, Walmart Inc., and/or ABC Corporations I-X, and were acting within the scope of their agency and/or employment for The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, Walmart Inc., and/or ABC Corporations I-X while manufacturing, designing, marketing, and/or selling the Boppy Loungers.

11.     At all relevant times, Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, Walmart Inc., ABC Companies I-XI, and John Does I-X, were the employees, agents, brokers, servants, alter egos and/or instrumentalities of one another and acted and/or failed to act through their employees, agents, brokers, servants, alter egos and/or instrumentalities, each and all of whom were acting within the scope of their authority, relating to the manufacture, design, marketing, and/or sale of the Boppy Loungers. Theidentities

2

of these employees, agents, brokers, servants, alter egos and/or instrumentalities, are known to Defendants herein and currently unknown to Plaintiffs, and include personnel responsiblefor the manufacture, design, marketing, and/or sale of the Boppy Loungers.

12.     At all relevant times, Defendants, John Does I-X, and any other agents of Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, Walmart Inc., ABC Companies I-X, and John Does I-X, who were involved in the manufacture, design, marketing, and/or sale of the Boppy Loungers, were employees, servants, and/or authorized, actual, and/or ostensible agents of Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, Walmart Inc., ABC Companies I-X, and John Does I-X, while acting within the scope of their employment, master-servant, and/or agency relationship with Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, Walmart Inc., ABC Companies I-XI, and John Does I-X, while manufacturing, designing, marketing, and/or selling the Boppy Loungers, and while under the oversight, direction, supervision, control, and/or right of control of Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a  Artsana Group, Walmart Inc., ABC Companies I-X, and John Does I-X.

13.     The negligence of all Defendants, jointly and severally, in the manufacturing, marketing, designing, and/or selling of the Boppy Loungers, as set forth below, caused and/or increased the risk of harm to Plaintiffs.

14.     Plaintiffs' injuries and damages were the direct result of the negligence and carelessness of all Defendants, and/or their agents, servants and/or employees who were involved in the manufacturing, designing, marketing, and/or selling of the Boppy Loungers, and were due in no manner whatsoever to the failure to act on the part of Plaintiffs, or any person other than the Defendants and/or their agents, servants, and/or employees.

Case ID: 221000594

15.     Jurisdiction and venue are proper in this Honorable Court as, at all relevant times, Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, Walmart Inc., ABC Companies I-X, and John Does I-X, regularly conducted business in the Commonwealth of Pennsylvania, including the City of Philadelphia, through their substantial and purposeful transaction of business there, including but not limited to their receipt of substantial compensation, revenues, and/or profits from sales of the subject Boppy Loungers.

16.     Venue in this action is properly laid in Philadelphia County pursuant to Pennsylvania Rules of Civil Procedure 1006 and 2179, as the Defendants regularly conduct business in Philadelphia County.

17.     Plaintiffs claim all damages cognizable under Pennsylvania Law.

## **OPERATIVE FACTS**

18.     Plaintiffs incorporate the above paragraphs as though set forth at length herein.

19.     Plaintiffs obtained the Boppy Original Newborn Lounger as a gift through their Walmart Inc. baby gift registry.

20.     The Boppy Loungers, including the Boppy Original Newborn Lounger, are padded pillow "loungers" for infants.

21.     The Boppy Loungers, including the Boppy Original Newborn Lounger, are designed, marketed, sold, and manufactured by the Defendants.

22.     Due to the defective and unreasonably dangerous design of the Boppy Loungers, including the Boppy Original Newborn Lounger, children placed in the loungers are at an increased risk of asphyxiation, hypoxia, anoxia, suffocation, airway obstruction and death due to the positions, angles, and padding of the defectively designed Boppy Loungers, including the Boppy Original Newborn Lounger.

4

Case ID: 221000594

23.     The Defendants marketed, advertised, and sold the Boppy Loungers, including the Boppy Original Newborn Lounger, as a product that infants could be placed in safely when the Defendants knew or should have known that placing infants in the Boppy Original Newborn Lounger could cause infants to suffer catastrophic injuries and death.

24.     Before and during their sale and marketing of the Boppy Original Newborn Lounger, the Defendants knew or should have known that the defective and unreasonably dangerous design of the Boppy Original Newborn Lounger could: cause infants to asphyxiate because of the padding, angles, and positions of the Boppy Original Newborn Lounger; cause infants' airways to be blocked; cause infants to be lying at a dangerous angle on the padded pillow; cause infants to assume positions that increase the risk of suffocation, hypoxia, anoxia, asphyxiation, and death; and cause infants to become stuck in positions in which they were unable to breathe.

25.     On September 23, 2021, the Boppy Loungers, including the Boppy Original Newborn Lounger, were recalled because infants could suffocate if they rolled, moved, or were placed on the lounger in a position that obstructs breathing, or rolled off the lounger onto an external surface, such as an adult pillow or soft bedding that obstructs breathing.

26.     Before the Boppy Loungers, including the Boppy Original Newborn Lounger, were recalled in September of 2021, the Defendants knew or should have known that the design, shape, and makeup of the Boppy Loungers, including the Boppy Original Newborn Lounger, caused, and increased the risk of causing, permanent and catastrophic injuries to the infants being placed in the Boppy Loungers, including the Boppy Original Newborn Lounger. Said injuries include suffocation, asphyxiation, hypoxia, anoxia, Sudden Infant Death Syndrome ("SIDS"), and death.

27.     Despite knowing that the design, shape, and makeup of the Boppy Loungers, including the Boppy Original Newborn Lounger, caused, and increased the risk of causing,

5

Case ID: 221000594

permanent and catastrophic injuries and death, the Defendants continued to market, sell, advertise, and tout the Boppy Loungers, including the Boppy Original Newborn Lounger, as safe products.

28.     Despite knowing that the design, shape, and makeup of the Boppy Loungers, including the Boppy Original Newborn Lounger, caused, and increased the risk of causing, permanent and catastrophic injuries and death, the Defendants knowingly, purposely, and consciously concealed their knowledge of these serious dangers associated with the Boppy Loungers, including the Boppy Original Newborn Lounger.

29.     On or about ████████████, Plaintiffs placed their infant son, Z.W., Jr., only ████ ████ old, in the Boppy Original Newborn Lounger.

30.     Shortly thereafter, Plaintiffs' son was discovered unresponsive in the Boppy Original Newborn Lounger.

31.     After being found unresponsive in the Boppy Original Newborn Lounger, Z.W., Jr., was rushed to the hospital where he was pronounced dead.

32.     Due to the unreasonably dangerous and defective design of the Boppy Original Newborn Lounger, as described throughout this Complaint, Plaintiffs' son, Z.W., Jr., was caused to asphyxiate and suffocate to death in the Boppy Original Newborn Lounger on ████████████.

33.     Defendants' manual and website acknowledge the risk of severe injury or death to infants placed to lay in the Boppy Original Newborn Lounger through asphyxiation, and they proceeded to market and sell the Boppy Original Newborn Lounger anyway and continued to do so after learning of infant injuries and deaths.

34.     Defendants' conduct shows they consciously understood the dangers of laying a baby in the contraption, that it could lead to severe injury or death, and deliberately and intentionally proceeded to market and sell the contraption anyway, in disregard to the rights and well-being of infants, including baby Z.W., Jr.  This conduct was wanton, willful, reckless, and

Case ID: 221000594

outrageous.

35.    As set forth more fully below, Defendants engaged in negligent, reckless, intentional, fraudulent, and/or outrageous conduct that caused, increased the risk of harm of, and/or was a substantial contributing causal factor in Plaintiffs and Plaintiffs' decedent suffering harm, death, and Plaintiffs' damages, which include, but are not limited to, the following:

    a.  Death;

    b.  Asphyxiation;

    c.  Suffocation;

    d.  Sudden infant death syndrome ("SIDS");

    e.  Cardiac arrest;

    f.  Hemorrhage;

    g.  Bleeding;

    h.  Hypoxia;

    i.  Brain damage;

    j.  Brain injury;

    k.  Disfigurement;

    l.  Pain and suffering;

    m.  Loss of life's pleasures;

    n.  Mental anguish;

    o.  Embarrassment;

    p.  Disfigurement;

    q.  Lost wages;
    r.  Loss of earning capacity;

    s.  Funeral expenses;

Case ID: 221000594

t.  All damages allowable under the Survival Act, 42 Pa. C.S.A. §8302, the applicable Rules of Civil Procedure and the decisional law interpreting the Survival Act, including the total estimated future earning power less the cost of personal maintenance, and/or pain and suffering endured by Z.W., Jr., prior to his death, including, but not limited to, physical pain and suffering, mental pain and suffering, loss of life's pleasures, disfigurement, and humiliation; and

u.  All damages allowable under the Wrongful Death Act, 42 Pa. C.S.A. § 8301, the applicable Rules of Civil Procedure and all decisional law interpreting the Wrongful Death Act, including damages for medical, funeral, and burial expenses, expenses of administration, monetary support Z.W., Jr., would have provided during his lifetime, the value of services provided or which could have been expected to have  been performed in the future by Z.W., Jr., and all pecuniary losses suffered as a result of Z.W., Jr.'s, death.

## COUNT I – NEGLIGENCE

### Plaintiffs v. All Defendants

36.  Plaintiffs incorporate the above paragraphs as though set forth at length herein.

37.  Defendants were engaged in negligent, reckless, intentional, and/or outrageous conduct in the design, manufacture, sale, and marketing of the Boppy Loungers, including the Boppy Original Newborn Lounger. The direct negligent, reckless, intentional, and/or outrageous conduct of these Defendants includes, but is not limited to, the following:

a.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Original Newborn Lounger device capable of causing infants who were placed in the Boppy Original Newborn Lounger device to asphyxiate and/or suffocate;

b.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Original Newborn Lounger device capable of causing infants who were placed in the Boppy Original Newborn Lounger device to die;

c.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Original Newborn Lounger device capable of causing infants who were placed in the Boppy Original Newborn Lounger device to suffer serious injuries, including brain damage;

d.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Original Newborn Lounger device at an angle that causes an infant's airwayto be obstructed or blocked;

8

Case ID: 221000594

e.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Original Newborn Lounger device with a defective shape and design that causes an infant in the device to assume positions that lead to suffocation, asphyxiation, and/or death of the infant;

f.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Original Newborn Lounger with an inadequate and/or unsafe restraint system that causes an infant in the device to suffocate and/or asphyxiate;

g.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Original Newborn Lounger device with a defective shape and design that utilizes fabric, cloth, and/or material that is unreasonably dangerous and/or unsafe,in that the fabric, cloth, and/or material causes infants to suffocate or asphyxiate and/or fails to provide an infant the ability to adequately breathe when the infant'sface comes into contact with the cloth, fabric, and/or material;

h.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Original Newborn Lounger device capable of causing infants who were placed in the Boppy Original Newborn Lounger device to suffer injuries, deformities, and disfigurement, including brain damage, developmental delays,and cognitive delays;

i.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Original Newborn Lounger device that contains parts and materials that cause an infant in the device to suffocate, asphyxiate, suffer injury, and/or die;

j.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Original Newborn Lounger device with inadequate and/or defective safety devices and measures;

k.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Original Newborn Lounger device despite the fact that the defective and dangerous design, shape, and makeup of the device causes infants placed in it to suffocate, asphyxiate, sustain injury, and/or die;

l.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy OriginalNewborn Lounger can cause an infant to suffer asphyxiation;

m.  Misrepresenting to the public, customers, and owners of the Boppy Original Newborn Lounger that the Boppy Original Newborn Lounger was safe for infantsto lie in;

n.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy Original Newborn Lounger can cause an infant to suffer suffocation;

o.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy

9

Case ID: 221000594

Original Newborn Lounger can cause an infant to suffer SIDS;

p.  Failing to perform adequate and proper testing and risk-hazard analysis on the Boppy Original Newborn Lounger device in order to ensure that it was safe for use before selling it;

q.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy Original Newborn Lounger can cause an infant to suffer death;

r.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy Original Newborn Lounger can cause an infant to suffer injuries;

s.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy OriginalNewborn Lounger can cause an infant to suffer brain damage and/or brain injury;

t.  Failing to timely recall the Boppy Original Newborn Lounger;

u.  Failing to warn that the Defendants knew that the Boppy Original Newborn Lounger device was associated with injuries and deaths suffered by numerous infants;

v.  Failing to seek appropriate and adequate guidance, advice, and input from all applicable professionals, including medical doctors, engineers, and medical professionals, in the Defendants' pre-sale design and marketing of the Boppy Original Newborn Lounger device in order to ensure the design, makeup, shape, and/or angle of the Boppy Original Newborn Lounger device was safe and not defective prior to marketing and selling it;

w.  Continuing to market and sell the Boppy Original Newborn Lounger despite being notified by numerous individuals and organizations, including parents, customers, governmental agencies, medical doctors, and medical groups or organizations, that the Boppy Original Newborn Lounger device was unsafe, defective, and had caused death and injuries to infants who were placed in the Boppy Original Newborn Lounger device;

x.  Continuing to market and sell the Boppy Original Newborn Lounger despite knowing that the defective design of the Boppy Original Newborn Lounger had caused or contributed to the deaths and injuries of numerous infants;

y.  Failing to issue post-sale warnings regarding the dangers and safety hazards associated with the Boppy Original Newborn Lounger; and

z.  Failing to issue adequate post-sale warnings regarding the dangers and safety hazards associated with the Boppy Original Newborn Lounger.

Case ID: 221000594

38.     As a direct and proximate result of the negligent, reckless, intentional, and/or outrageous conduct of Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, Walmart Inc., ABC Companies I-X, and John Does I- X, Plaintiffs suffered the damages set forth above.

39.     The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiffs' damages set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages consisting of all amounts recoverable under Pennsylvania law, in excess of local arbitration limits, exclusive of interest and costs, plus costs of suit incurred.

## COUNT II – FRAUDULENT CONCEALMENT

40.     Plaintiffs incorporate the above paragraphs as though set forth at length herein.

41.     The Defendants each have a duty to consumers, users of the Boppy Original Newborn Lounger, and infants who are placed in the Boppy Original Newborn Lounger, to provide material facts regarding the safety hazards and dangers associated with the Boppy Original Newborn Lounger and its unsuitability for its intended use: for infants to lie in it.

42.     The Defendants, at all times, were aware and knew that the Boppy Original Newborn Lounger was unsafe for infants to lie in, failed to conform to accepted safe practices and standards for infants to lie in, and that the Boppy Original Newborn Lounger had caused the injuries and deaths of infants.

43.     Despite this knowledge, the Defendants, through their marketing materials, advertising, websites, and the packaging of the Boppy Original Newborn Lounger, consistently represented to the public, parents, owners of the Boppy Original Newborn Lounger, prospective customers, and users of the Boppy Original Newborn Lounger, throughout the period that the Defendants were selling the Boppy Original Newborn Lounger, that it was safe for infants to lie

11

Case ID: 221000594

in.

44.     In making these representations and statements, the Defendants each deliberately and knowingly concealed material facts relating to the safety of the Boppy Original Newborn Lounger and its suitability for infants to lie in, and the fact that numerous infants had died or been injured as a result of the dangers of the Boppy Original Newborn Lounger. These concealed material facts included:

      a.   The Boppy Original Newborn Lounger was not safe for infants to lie in;

      b.   The Boppy Original Newborn Lounger's design, including its makeup and angle,was unsafe for children;

      c.   The Boppy Original Newborn Lounger's design, including its makeup and angle,could cause an infant to suffocate, asphyxiate, and/or die;

      d.   The Boppy Original Newborn Lounger's design, including its makeup and angle, could cause an infant to suffer hypoxic and/or anoxic brain damage or brain injury; and

      e.   The Boppy Original Newborn Lounger had been linked to infant injuries and death.

45.     The Defendants deliberately concealed these material facts in their representations, intending that the consuming public would rely on them in purchasing and using the Boppy Original Newborn Lounger.

46.     The Defendants' concealment of these material facts was uniform toward the consuming public, including Plaintiffs. The Plaintiffs relied on the Defendants' representations that the Boppy Original Newborn Lounger was safe for infants to lie in, and the Plaintiffs would not have purchased, obtained, or used the Boppy Original Newborn Lounger had the Defendants not represented that the Boppy Original Newborn Lounger was a safe product for infants to lie in.

47.     As a direct and proximate result of the Defendants' deliberate concealment and silence regarding material facts of the dangers of the Boppy Original Newborn Lounger for infant

Case ID: 221000594

use, despite ample information at Defendants' disposal and the Defendants' knowledge to the contrary, numerous infants have been injured or killed, including the Plaintiffs' son, Z.W., Jr.

48.     As a direct result of the Defendants' deliberate concealment and silence regarding the dangers of the Boppy Original Newborn Lounger, the Plaintiffs did not discover the truth regarding the dangers of the Boppy Original Newborn Lounger until at least September 23, 2021, when the Boppy Original Newborn Lounger was recalled.

49.     As a direct and proximate result of Defendants' deliberate concealment and silence regarding the dangers of the Boppy Original Newborn Lounger, Plaintiffs suffered the damages set forth herein.

50.     The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiffs' damages set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages consisting of all amounts recoverable under Pennsylvania law, in excess of local arbitration limits, exclusive of interest and costs, plus costs of suit incurred.

## COUNT III – STRICT LIABILITY – DEFECTIVE MANUFACTURE AND DESIGN

### Plaintiffs v. All Defendants

51.     Plaintiffs incorporate the above paragraphs as though set forth at length herein.

52.     At all relevant times hereto, the Boppy Original Newborn Lounger was defective as to design, manufacture, and warnings, causing the Boppy Original Newborn Lounger to be in a dangerous and defective condition that made it unsafe for its intended and reasonably foreseeable uses.

53.     Plaintiffs are in the class of persons that the Defendants should reasonably foresee as being subject to the harm caused by the defectively designed Boppy Original Newborn Lounger insofar as Plaintiffs were the type of persons by whom the Boppy Original Newborn Lounger was

13

Case ID: 221000594

intended to be used.

54.     Defendants, which are engaged in the business of selling the Boppy Original Newborn Lounger, manufactured and supplied the Boppy Original Newborn Lounger and placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the products.

55.     The Boppy Original Newborn Lounger supplied to Plaintiffs was defective in design and formulation and unreasonably dangerous when it left the hands of Defendants, the manufacturers and suppliers, and reached the user and consumer of the product, Plaintiffs, without substantial alteration in the condition in which it was sold.

56.     The Boppy Original Newborn Lounger was not reasonably fit, suitable, or safe for its intended purposes in that it: (a) deviated from the design specification, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or (b) failed to contain adequate warnings or instructions, or (c) was designed in a defective manner.

57.     By reason of their conduct in designing, manufacturing, marketing, and distributing the defective Boppy Original Newborn Lounger device, Defendants are strictly liable for the injuries and damages sustained by Plaintiff as set forth above.

58.     The defective and dangerous conditions of the Boppy Original Newborn Lounger, for which Defendants are strictly liable, include, but are not limited to, the following:

    a.  The Boppy Original Newborn Lounger device was designed in a dangerous manner with a dangerous angle, makeup, and shape that made it capable of causing infants who were placed in the Boppy Original Newborn Lounger device to asphyxiate and/or suffocate;

    b.  The Boppy Original Newborn Lounger device was designed in a dangerous manner with a dangerous angle, makeup, and shape that made it capable of

Case ID: 221000594

causing infants who were placed in the Boppy Original Newborn Lounger device to die;

c.  The Boppy Original Newborn Lounger device was designed in a dangerous manner with a dangerous angle, makeup, and shape that made it capable of causing infants who were placed in the Boppy Original Newborn Lounger device to suffer serious injuries, including brain damage;

d.  The Boppy Original Newborn Lounger device was designed in a dangerous manner with a dangerous angle, makeup, and shape that made it capable of causing an infant's airway to be obstructed or blocked;

e.  The Boppy Original Newborn Lounger device was designed and/or manufactured and/or sold and/or assembled with a defective angle that causes an infant's airway to be obstructed or blocked;

f.  The Boppy Original Newborn Lounger device was designed and/or manufactured and/or sold and/or assembled with a defective shape and design that causes an infant in the device to assume positions that lead to suffocation, asphyxiation, and/or death of the infant;

g.  The Boppy Original Newborn Lounger device was designed and/or manufactured and/or sold and/or assembled with a defective and inadequate and/or unsafe restraint system that causes an infant in the device to suffocate and/or asphyxiate;

h.  The Boppy Original Newborn Lounger device as designed and/or manufactured and/or sold and/or assembled was capable of causing infants who were placed in the Boppy Original Newborn Lounger device to suffer from injuries, including brain damage, anoxia, hypoxia, developmental delays, cognitive delays, and death;

i.  The Boppy Original Newborn Lounger device as designed and/or manufactured and/or sold and/or assembled contains parts and materials that cause an infant in the device to suffocate, asphyxiate, suffer injury, and/or die;

j.  The Boppy Original Newborn Lounger device was designed and/or manufactured and/or sold and/or assembled with inadequate and/or defective safety devices and measures;

k.  The Boppy Original Newborn Lounger device was designed and/or manufactured and/or sold and/or assembled as a device to be used for infants despite the fact that the defective and dangerous design, shape, and makeup of the device causes infants placed in it to suffocate, asphyxiate, sustain injury, and/or die;

Case ID: 221000594

l.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy Original Newborn Lounger can cause an infant to suffer suffocation, brain injury, brain death, asphyxiation, SIDS, injury, and/or die;

m.  Failing to warn that the Boppy Original Newborn Lounger was not safe for infant use;

n.  Failing to warn that the Boppy Original Newborn Lounger should not be used for infants to lie in;

o.  Failing to warn that the Defendants knew that the Boppy Original Newborn Lounger was associated with injuries and deaths suffered by numerous infants;

p.  The Boppy Original Newborn Lounger device was designed and/or manufactured and/or sold and/or assembled with a defective shape and design that utilizes fabric, cloth, and/or material that is unreasonably dangerous and/or unsafe, in that the fabric, cloth, and/or material causes infants to suffocate or asphyxiate and/or fails to provide an infant the ability to adequately breathe when the infant's face comes into contact with the cloth, fabric, and/or material;

q.  Misrepresenting to the public, customers, and owners of the Boppy Original Newborn Lounger that the Boppy Original Newborn Lounger was safe for infants to lie in;

r.  Failing to perform adequate and proper testing and risk-hazard analysis on the Boppy Original Newborn Lounger device in order to ensure it was safe for use before selling it;

s.  Failing to timely recall the Boppy Original Newborn Lounger;

t.  Failing to seek appropriate and adequate guidance, advice, and input from all applicable professionals, including medical doctors, engineers, and medical professionals, in the Defendants' pre-sale design and marketing of the Boppy Original Newborn Lounger device in order to ensure the design, makeup, shape, and/or angle of the Boppy Original Newborn Lounger device was safe and not defective prior to marketing and selling it;

u.  Failing to issue post-sale warnings regarding the dangers and safety hazards associated with the Boppy Original Newborn Lounger; and

v.  Failing to issue adequate post-sale warnings regarding the dangers and safety hazards associated with the Boppy Original Newborn Lounger.

59.     As a direct and proximate result of the defective and dangerous condition of the

Boppy Original Newborn Lounger described above, Plaintiffs suffered the damages set forth

Case ID: 221000594

herein.

60.     The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiffs' damages set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages consisting of all amounts recoverable under Pennsylvania law, in excess of local arbitration limits, exclusive of interest and costs, plus costs of suit incurred.

## COUNT IV – STRICT LIABILITY – FAILURE TO WARN

### Plaintiffs v. All Defendants

61.     Plaintiffs incorporate the above paragraphs as though set forth at length herein.

62.     At all relevant times hereto, Defendants failed to properly and adequately warn and instruct Plaintiffs as to the risks and benefits of the Boppy Original Newborn Lounger, including that the design, makeup, shape, and/or angle of the Boppy Original Newborn Lounger can cause an infant to suffer suffocation, brain injury, brain death, asphyxiation, SIDS, injury, and/or die.

63.     At all relevant times hereto, Defendants failed to warn and instruct Plaintiffs that the Boppy Original Newborn Lounger was not safe for infant use.

64.     At all relevant times hereto, Defendants failed to warn Plaintiffs that the Boppy Original Newborn Lounger should not be used for infants to lie in.

65.     At all relevant times hereto, Defendants failed to warn Plaintiffs that Defendants knew that the Boppy Original Newborn Lounger was associated with injuries and deaths suffered by numerous infants.

66.     At all relevant times hereto, Defendants failed to issue post-sale warnings regarding the dangers and safety hazards associated with the Boppy Original Newborn Lounger.

67.     At all relevant times hereto, Defendants failed to issue adequate post-sale warnings regarding the dangers and safety hazards associated with the Boppy Original Newborn Lounger.

Case ID: 221000594

68.     As a direct and proximate result of Defendants' failure to warn Plaintiffs of the above-described dangers of the Boppy Original Newborn Lounger, Plaintiffs suffered the damages set forth herein.

69.     The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiffs' damages set forth above

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages consisting of all amounts recoverable under Pennsylvania law, in excess of local arbitration limits, exclusive of interest and costs, plus costs of suit incurred.

## <u>COUNT V – NEGLIGENT MISREPRESENTATION</u>

### **Plaintiffs v. All Defendants**

70.     Plaintiffs incorporate the above paragraphs as though set forth at length herein.

71.     Defendants have a duty to consumers, users of the Boppy Original Newborn Lounger, and infants placed in the Boppy Original Newborn Lounger, to accurately and truthfully represent that the Boppy Original Newborn Lounger was safe for infant use.

72.     The representations made by Defendants were, in fact, false.

73.     Defendants failed to exercise ordinary care in the representations concerning the Boppy Original Newborn Lounger while they were involved in its manufacture, sale, marketing, advertising, and distribution in interstate commerce, because Defendants negligently misrepresented the Boppy Original Newborn Lounger's high risk of unreasonable and dangerous hazards.

74.     Defendants breached their duty by representing that the Boppy Original Newborn Lounger was safe for infant use and did not pose a risk of infant death or serious injury.

75.     As a foreseeable, direct, and proximate result of the negligent misrepresentations of  Defendants as set forth herein, Plaintiffs did not know or have reason to know that the Boppy

18

Case ID: 221000594

Original Newborn Lounger was not safe for infant use, that it lacked adequate and accurate warnings, and that it created a high risk, and/or higher than acceptable risk, and/or higher than reported and represented risk, of serious injury or death, including suffocation, asphyxiation, hypoxia, anoxia, SIDS, and death, which are permanent and lasting in nature.

76.     As a direct and proximate result of Defendants' negligent misrepresentations regarding the dangers of the Boppy Original Newborn Lounger, Plaintiffs suffered the damages set forth herein.

77.     The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiffs' damages set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages consisting of all amounts recoverable under Pennsylvania law, in excess of local arbitration limits, exclusive of interest and costs, plus costs of suit incurred.

## COUNT VI – COMMON LAW FRAUD

### Plaintiffs v. All Defendants

78.     Plaintiffs incorporate the above paragraphs as though set forth at length herein.

79.     As alleged throughout this Complaint, the Defendants, through their marketing materials, targeted advertising, websites, and the packaging of the Boppy Original Newborn Lounger, consistently, falsely, and fraudulently represented to the public throughout the period they were selling the Boppy Original Newborn Lounger that the Boppy Original Newborn Lounger was safe for infant use.

80.     The Defendants made numerous representations knowing that they were false or with reckless indifference to the truth, including without limitation:

> a.   Marketing, advertising, and labeling the Boppy Original Newborn Lounger productas safe for infants;

Case ID: 221000594

b.  Marketing, advertising, and labeling the Boppy Original Newborn Lounger productas safe for infants to lie in;

c.  Marketing, advertising, and labeling the Boppy Original Newborn Lounger as a product that was safe from the point of birth of the child until the child is able to roll over or weighs in excess of 16 pounds;

d.  Marketing, advertising, and labeling the Boppy Original Newborn Lounger productas safe for up to a 16-pound weight limit; and

e.  Marketing, advertising, and labeling the Boppy Original Newborn Lounger product as having a safe and a "recessed bottom for baby's comfort."

81.   Defendants, through their marketing materials, targeted advertising, websites, and the packaging of the Boppy Original Newborn Lounger, consistently and falsely omitted material facts and information from the public, customers, purchasers, parents, and owners of the Boppy Original Newborn Lounger, throughout the period that the Defendants were selling the Boppy Original Newborn Lounger. The Defendants made these material omissions and false statements knowing that the information presented was incomplete, untrue, and with reckless indifference to the truth. These material omissions include, but are not limited to, the Defendants' failures to inform buyers and users of the Boppy Original Newborn Lounger that:

a.  The Boppy Original Newborn Lounger was not safe for infants to lie in;

b.  The Boppy Original Newborn Lounger's design, including its makeup and angle, was unsafe for children;

c.  The Boppy Original Newborn Lounger's design, including its makeup and angle, could cause an infant to suffocate, asphyxiate, and/or die;

d.  The Boppy Original Newborn Lounger's design, including its makeup and angle, could cause an infant to suffer hypoxic and/or anoxic brain damage or brain injury; and

e.  The Boppy Original Newborn Lounger had been linked to infant injuries and death.

82.   The Defendants made these false statements and material omissions intending that the consuming public and users of the Boppy Original Newborn Lounger would rely on them in

Case ID: 221000594

purchasing or using the Boppy Original Newborn Lounger product.

83.     The Defendants were under a duty to disclose to Plaintiffs and consumers the defective nature of the Boppy Original Newborn Lounger, including the risks of infant injury and death.

84.     Defendants' concealment and omissions of material facts concerning the safety of the Boppy Original Newborn Lounger were made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and consumers to induce them to purchase and/or use the Boppy Original Newborn Lounger as well as to mislead them into reliance upon and cause them to use the Boppy Original Newborn Lounger.

85.     At the time these representations were made by the Defendants and at the time Plaintiffs used the Boppy Original Newborn Lounger, Plaintiffs were unaware of the falsehood of these representations, and reasonably believed them to be true.

86.     The Defendants knew and had reason to know that the Boppy Original Newborn Lounger could and would cause severe and grievous personal injuries and death to infants placed in the product, and that the Boppy Original Newborn Lounger was inherently dangerous in a manner that exceeded any purported benefit.

87.     These false statements and material omissions were made uniformly to the consuming public, parents, owners of the Boppy Original Newborn Lounger, and prospective customers. These individuals, including the Plaintiffs, reasonably relied on the Defendants' misrepresentations and material omissions regarding the Boppy Original Newborn Lounger and would not have purchased, obtained, or used a Boppy Original Newborn Lounger had the Defendants not represented that the Boppy Original Newborn Lounger was a safe product for infants to use.

Case ID: 221000594

88.     Defendants knew or had reason to know that Plaintiffs and consumers had no way to determine the truth regarding the Defendants' concealment and omissions, including Defendants' material omissions of facts surrounding the dangers of the Boppy Original Newborn Lounger, as described in detail herein.

89.     Plaintiffs did not discover the truth about the dangers of the Boppy Original Newborn Lounger, nor did Plaintiffs discover the false representations of Defendants, nor would Plaintiffs with reasonable diligence have discovered the truth about the Defendants' misrepresentations at the time Plaintiffs used the Boppy Original Newborn Lounger.

90.     The Defendants' wrongful conduct constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly, and/or purposefully on Plaintiffs.

91.     As a direct and proximate result of Defendants' fraud, Plaintiffs suffered the damages set forth herein.

92.     The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiffs' damages set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages consisting of all amounts recoverable under Pennsylvania law, in excess of local arbitration limits, exclusive of interest and costs, plus costs of suit incurred.

## <u>COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>

### **Plaintiffs v. All Defendants**

93.     Plaintiffs incorporate the above paragraphs as though set forth at length herein.

94.     Defendants carelessly and negligently manufactured, designed, developed, marketed, advertised, and sold the Boppy Original Newborn Lounger to Plaintiffs and consumers, carelessly and negligently concealed the risks of the Boppy Original Newborn Lounger from

Case ID: 221000594

Plaintiffs, and carelessly and negligently misrepresented the quality and safety of the Boppy Original Newborn Lounger.

95.     At all times material hereto, Plaintiff, Tawana Patina Reid, was the mother of Plaintiffs' Decedent, Z.W., Jr., a deceased minor.

96.     At all times material hereto, Plaintiff, Zaleiph Wooten was the father of Plaintiffs' Decedent, Z.W., Jr., a deceased minor.

97.     On ███████████, Plaintiffs witnessed the traumatic event of personally observing their son, Z.W., Jr., lifeless, unresponsive, and not breathing, with blood coming out of his nose and mouth and running down his chest, as a result of his placement in the negligently and defectively designed Boppy Original Newborn Lounger device.

98.     As a result of personally witnessing and observing their son, Z.W., Jr., lifeless, unresponsive, and not breathing, with blood coming out of his nose and mouth and running down his chest, as a result of his placement in the negligently and defectively designed Boppy Original Newborn Lounger device, Plaintiffs suffered severe emotional distress and pain and suffering.

99.     Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, were directly impacted by Defendants' carelessness and negligence, in that Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, sustained and will continue to sustain emotional distress, severe physical injuries, economic losses, and other damages as a direct result of their use of the negligently and defectively designed Boppy Original Newborn Lounger device sold and distributed by Defendants.

100.     As a direct and proximate result of the negligence and recklessness of the Defendants and their agents and/or employees, as specifically described and/or identified herein, and Plaintiffs' contemporary observation of the Defendants' negligent and reckless acts and/or omissions and Plaintiffs' Decedent's resulting fatal injuries, Plaintiffs each sustained severe and permanent emotional distress and physical manifestations thereof.

Case ID: 221000594

101.    The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiffs' damages set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages consisting of all amounts recoverable under Pennsylvania law, in excess of local arbitration limits, exclusive of interest and costs, plus costs of suit incurred.

## COUNT VIII – BREACH OF EXPRESS WARRANTY

### Plaintiffs v. All Defendants

102.    Plaintiffs incorporate the above paragraphs as though set forth at length herein.

103.    At all relevant times, Defendants manufactured, distributed, advertised, marketed, promoted and sold the Boppy Original Newborn Lounger.

104.    The Defendants sold and warranted the Boppy Original Newborn Lounger with the express warranty that it was safe for infant use and free from defects.

105.    At all relevant times, Defendants intended that the Boppy Original Newborn Lounger be used in the manner that Plaintiffs in fact used it and Defendants expressly warranted that each product was safe and fit for use by consumers, that it was of merchantable quality, that its side effects were minimal and comparable to other alternative devices or procedures, and that it was adequately tested and fit for its intended use.

106.    At all relevant times, Defendants were aware that consumers, including Plaintiffs, would use the Boppy Original Newborn Lounger, which is to say that Plaintiffs were foreseeable users of the Boppy Original Newborn Lounger.

107.    Plaintiffs were at all relevant times in privity with the Defendants.

108.    The Boppy Original Newborn Lounger was expected to reach and did in fact reach consumers, including Plaintiffs, without substantial change in the condition in which it was

Case ID: 221000594

manufactured and sold by Defendants.

109.    As a result of the Defendants' conduct, as previously set forth and incorporated herein by reference, the Defendants breached their express warranties to Plaintiff by failing to provide any warning regarding the safety hazards or dangers that the Boppy Original Newborn Lounger device posed to infants, and the Defendants continued to manufacture, sell, design, assemble, market, and advertise the Boppy Original Newborn Lounger device.

110.    Plaintiffs relied on Defendants' express warranty that the Boppy Original Newborn Lounger was safe for infant use and free from defects and, as a result, used the Boppy Original Newborn Lounger as directed, and therefore, in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

111.    At the time of making such express warranties, Defendants knew or should have known that the Boppy Original Newborn Lounger did not conform to these express representations because the Boppy Original Newborn Lounger was not safe for infant use and posed risks of serious injury and death, which Defendants did not accurately warn about, thus making the Boppy Original Newborn Lounger unreasonably unsafe for its intended purpose.

112.    Plaintiffs relied upon the representations and warranties of Defendants in connection with the use recommendation of the Boppy Original Newborn Lounger.

113.    Defendants breached their express warranties to Plaintiffs in that the Boppy Original Newborn Lounger was not of merchantable quality, safe and fit for its intended uses, nor was it adequately tested.

114.    Defendants' breaches constituted violations of common law and Pennsylvania statutory principles, including 13 Pa. Stat. Ann. § 2313, et seq.

115.    As a direct and proximate result of the negligent, reckless, intentional, and/or outrageous conduct of Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco,

Case ID: 221000594

Artsana S.p.A. d/b/a Artsana Group, Walmart Inc., ABC Companies I-X, and John Does I- X, Plaintiffs suffered the damages set forth above.

116.    The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiffs' damages set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages consisting of all amounts recoverable under Pennsylvania law, in excess of local arbitration limits, exclusive of interest and costs, plus costs of suit incurred.

## COUNT IX – BREACH OF IMPLIED WARRANTY

### Plaintiffs v. All Defendants

117.    Plaintiffs incorporate the above paragraphs as though set forth at length herein.

118.    At all relevant times, Defendants manufactured, distributed, advertised, marketed, promoted and sold the Boppy Original Newborn Lounger.

119.    At all relevant times, Defendants intended that the Boppy Original Newborn Lounger be used in the manner that Plaintiffs in fact used it and Defendants impliedly warranted the product to be of merchantable quality, safe and fit for such use, and adequately tested.

120.    Defendants were aware that Plaintiffs relied upon them to properly design, manufacture, sell, and market the Boppy Original Newborn Lounger in a safe, proper, and workman like manner.

121.    Defendants were aware that consumers, including Plaintiffs, would use the Boppy Original Newborn Lounger in the manner directed by the instructions for use, which is to say that Plaintiffs were foreseeable users of the Boppy Original Newborn Lounger.

122.    Plaintiffs were at all relevant times in privity with the Defendants.

123.    The Boppy Original Newborn Lounger was expected to reach and did in fact reach consumers, including Plaintiffs, without substantial change in the condition in which it was

Case ID: 221000594

manufactured and sold by Defendants.

124.    The Boppy Original Newborn Lounger was not fit for its intended purposes, including infant placement, due to its dangerous and defective design, unsafe angle, makeup, padding and/or shape.

125.    In reliance upon Defendants' implied warranties, Plaintiffs used the Boppy Original Newborn Lounger as described and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

126.    Defendants breached their duty to Plaintiffs and to Plaintiffs' son, Z.W., Jr., to guarantee that the Boppy Original Newborn Lounger was fit for its intended purposes, including as a device for infants to be placed in.

127.    Defendants further breached their duty to Plaintiffs and to Plaintiffs' son, Z.W., Jr., to guarantee that the Boppy Original Newborn Lounger would not cause infants placed in it to suffer suffocation, asphyxiation, injury, or death.

128.    Defendants breached their implied warranties to Plaintiffs and consumers in that the Boppy Original Newborn Lounger was not of merchantable quality, safe and fit for its intended use, or adequately tested, in violation of common law principles and the following statutory provision: 13 Pa. Stat. Ann. § 2314, et seq.

129.    As a result of the Defendants' conduct, as previously set forth and incorporated herein by reference, the Defendants breached their implied warranties to Plaintiffs.

130.    As a direct and proximate result of the negligent, reckless, intentional, and/or outrageous conduct of Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, Walmart Inc., ABC Companies I-X, and John Does I- X, Plaintiffs suffered the damages set forth above.

131.    The aforementioned conduct of Defendants caused, increased the risk of harm of,

Case ID: 221000594

and/or was a substantial causal factor of, Plaintiffs' damages set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages consisting of all amounts recoverable under Pennsylvania law, in excess of local arbitration limits, exclusive of interest and costs, plus costs of suit incurred.

## <u>COUNT X – VIOLATION OF CONSUMER PROTECTION LAW</u>

### **Plaintiffs v. All Defendants**

132.   Plaintiffs incorporate the above paragraphs as though set forth at length herein.

133.   Plaintiffs used the Boppy Original Newborn Lounger primarily for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

134.   Had Defendants not engaged in the deceptive conduct described herein, Plaintiffs would not have used the Boppy Original Newborn Lounger and would not have incurred related medical costs and injury.

135.   Defendants engaged in unfair methods of competition, deceptive acts, and/or practices that were proscribed by law, including the following:

     a.   Representing that goods or services have characteristics, uses, or benefits that theydo not have;

     b.   Advertising goods or services with the intent not to sell them as advertised; and

     c.   Engaging in fraudulent or deceptive conduct that creates a likelihood of confusionor misunderstanding.

136.   Defendants had a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, promotion, and sale of the Boppy Original Newborn Lounger.

Case ID: 221000594

137.    Had Defendants not engaged in the deceptive conduct described above, Plaintiffs would not have used the Boppy Original Newborn Lounger and would not have incurred the injuries described herein.

138.    Defendants' deceptive, unconscionable, and/or fraudulent representations and material omissions to consumers, including Plaintiffs, constituted unfair and deceptive acts and trade practices in violation of the state consumer protection statutes listed.

139.    Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive, or fraudulent acts, or trade practices in violation of state consumer protection statutes, as listed below.

140.    Plaintiffs were injured by the cumulative and indivisible nature of the Defendants' conduct. The cumulative effect of the Defendants' conduct directed at consumers, including Plaintiffs, was to create demand for and sell the Boppy Original Newborn Lounger. Each aspect of the Defendants' conduct combined to artificially create sales of the Boppy Original Newborn Lounger.

141.    The Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to Plaintiffs and consumers constituted unfair and deceptive acts and trade practices in violation of the state consumer protection statutes, including but not limited to 73 P.S. Ch. 4, §201-1, et. seq.

142.    The Defendants' actions, as complained of herein, constitute unfair competition, or unfair, unconscionable, deceptive, or fraudulent acts, or trade practices in violation of the state consumer protection statutes, including but not limited to 73 P.S. Ch. 4, §201-1, et. seq.

143.    Under the statute listed above, to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising, Defendants were subject to liability for unfair, deceptive, fraudulent, and unconscionable consumer sales practices.

29

Case ID: 221000594

144.    Defendants violated the statute that was enacted in this state to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the Boppy Original Newborn Lounger was fit to be used for the purpose for which it was intended, when in fact it was defective and dangerous, and by other acts alleged herein. These representations were made in uniform promotional materials.

145.    The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts under the state statutes enacted to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising.

146.    Defendants had actual knowledge of the defective and dangerous condition of the Boppy Original Newborn Lounger and failed to take any action to cure such defective and dangerous conditions.

147.    Plaintiffs and the community at large relied upon Defendants' misrepresentations and omissions in determining whether the product was safe for infant use.

148.    Had the Defendants not engaged in the deceptive conduct described above, Plaintiffs would not have used the Boppy Original Newborn Lounger.

149.    Defendants' deceptive, unconscionable, and/or fraudulent representations and material omissions to consumers constituted unfair and deceptive acts and practices.

150.    As a direct and proximate result of the conduct of Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, Walmart Inc., ABC Companies I-X, and John Does I-X, Plaintiffs suffered the damages set forth above.

151.    The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiffs' damages set forth above.

Case ID: 221000594

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages consisting of all amounts recoverable under Pennsylvania law, in excess of local arbitration limits, exclusive of interest and costs, plus costs of suit incurred.

## COUNT XI – GROSS NEGLIGENCE

### Plaintiffs v. All Defendants

152.    Plaintiffs incorporate the above paragraphs as though set forth at length herein.

153.    The wrongs done by the Defendants were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiffs, for which the law would allow, and for which Plaintiffs will seek at the appropriate time under governing law,  the imposition of exemplary damages, in that Defendants' conduct was specifically intended to cause substantial injury to Plaintiffs; or, when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; or included material representations that were false, with Defendants knowing that they were false or with reckless disregard as to the truth, with the intent that the representation is acted on by Plaintiffs.

154.    Plaintiffs relied on the representations of Defendants and suffered injury as a proximate result of this reliance.

155.    Plaintiffs therefore will seek to assert claims for exemplary damages at the appropriate time under governing law.

156.    Plaintiffs allege that the acts and omissions of Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to

Case ID: 221000594

Plaintiffs.  In that regard, Plaintiffs will seek exemplary damages in an amount that would punish Defendants for their conduct and deter other manufacturers from engaging in such misconduct in the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages consisting of all amounts recoverable under Pennsylvania law, in excess of local arbitration limits, exclusive of interest and costs, plus costs of suit incurred.

<u>**FIRST CAUSE OF ACTION – WRONGFUL DEATH**</u>

**Plaintiffs v. All Defendants**

157.    Plaintiffs incorporate the above paragraphs as though set forth at length herein.

158.    Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., bring this action on behalf of the beneficiaries under and by virtue of the Wrongful Death Act, Pa. C.S.A. §8301, and the applicable Rules of Civil Procedure and decisional law.

159.    Z.W., Jr., left surviving him the following persons who are beneficiaries under the Wrongful Death Act:

1.  Zaleiph Wooten
    1915 N. Fulton Avenue
    Baltimore, MD 21217

2.  Tawana Patina Reid
    929 Abbott Court
    Baltimore, MD 21202

160.    As a direct and proximate result of the acts and omissions of the Defendants, as set forth herein, Z.W., Jr., was caused grave injuries and death resulting in the entitlement to damages by said beneficiaries under the Wrongful Death Act.

32

Case ID: 221000594

161.     Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., claim damages for all administrator's expenses recoverable under the Wrongful Death Act, including but not limited to, damages for funeral and burial expenses, and expenses of administration necessitated by reason of injuries causing decedent's death.

162.     Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., claim damages for loss of the monetary support that decedent would have provided to his beneficiaries during decedent's lifetime, including, but not limited to, earnings, maintenance, support, and other similar losses recognized under the Wrongful Death Act, that they would have received from him for the rest of the decedent's natural life.

163.     Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., claim under the Wrongful Death Act damages for services provided or which could have been expected to have been performed in the future by decedent.

164.     Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., claim damages under the Wrongful Death Act for all pecuniary losses suffered by beneficiaries.

165.     Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., Claim, on behalf of the Wrongful Death beneficiaries, damages for emotional and profound loss, and other similar losses recognized under the Wrongful Death Act.

166.     Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., claim, on behalf of the Wrongful Death beneficiaries, damages under the Wrongful Death Act for the loss of companionship, services, comfort, society, guidance, solace, and protection of decedent. Plaintiffs, Zaleiph Wooten and Tawana Patina Reid,

Case ID: 221000594

Individually and as Co-Administrators of the Estate of Z.W., Jr., claim damages under the Wrongful Death Act, and the full measure of damages allowed under the law and under the categories of administrators' expenses, support, and services as defined under the laws of the Commonwealth of Pennsylvania.

**WHEREFORE**, Plaintiffs demand all damages recoverable under the Pennsylvania Wrongful Death Act against all Defendants in an amount of excess of the local arbitration rules, exclusive of delay damages, pre-judgment interest, and post-judgment interest and costs.

## SECOND CAUSE OF ACTION – SURVIVAL ACT

167.    Plaintiffs incorporate the above paragraphs as though set forth at length herein.

168.    Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., bring this Survival action on behalf of Z.W., Jr., under and by virtue of 42 Pa. C.S.A. §8302, and the applicable Rules of Civil Procedure and decisional law.

169.    As a result of the death of Z.W., Jr., his Estate has been deprived of the economic value of his life expectancy, and Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., claim under the Survival Act damages for all pecuniary losses suffered by the Estate as a result of his death, including all loss of income, earnings, retirement income and benefits and Social Security income, until death, as a result of decedent's death.

170.    Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., further claim under the Survival Act the total amount of future lost earning capacity, including, but not limited to, the total amount of future lost earnings and earning capacity, including, but not limited to, the total lost future net earnings for decedent, less his cost of personal maintenance.

34

Case ID: 221000594

171.     Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., further claim under the Survival Act damages for the decedent's embarrassment, disfigurement, humiliation, and mental anguish.

172.     Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., further claim under the Survival Act damages for the conscious pain and suffering, and inconvenience endured by decedent prior to his death, including, but not limited     to, physical pain and suffering, mental pain and suffering, and the fright and mental suffering attributed to the peril leading to decedent's death.

173.     Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., claim the full measure of damages under the Survival Act and decisional law interpreting said Act.

**WHEREFORE**, Plaintiffs, Zaleiph Wooten and Tawana Patina Reid, Individually and as Co-Administrators of the Estate of Z.W., Jr., demand all damages recoverable under the Pennsylvania Survival Act against all Defendants in an amount of excess of the local arbitration rules, exclusive of delay damages, pre-judgment interest, post-judgment interest and costs.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

_____
Shanin Specter, Esquire
Michael A. Trunk, Esquire
Aaron L. Dunbar, Esquire
*Attorneys for Plaintiffs*

Date:   October 7, 2022

35

## VERIFICATION

Plaintiffs, Zaleiph Wooten, Sr. and Tawana Patina Reid, as Co-Administrators of the Estate of Z.W., Jr., deceased, hereby verify that the within Civil Action Complaint is based on first-hand information and on information furnished to counsel and obtained by them in the course of this lawsuit.  The language of the document is that of counsel and not of the affiants. To the extent that the contents of the document are based on information furnished to counsel and obtained by them during the course of this lawsuit, the affiants have relied upon counsel in taking this verification.  This verification is made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

_____
Tawana Reid, as Co-Administrator of the Estate of Z.W. Jr.

_____
Zaleiph Wooten, Sr., as Co-Administrator of the Estate of Z.W. Jr.