JUDGE KAI N. SCOTT
**DECISION COVER SHEET**

Email to: opinions_filed@paed.uscourts.gov          Date:   August 14, 2023

Caption:   22-4341

Wooten et al. v. The Boppy Company, LLC, et al.

Issue/Description:

Granting motion to remand because forum defendant was not fraudulently joined.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZALEIPH WOOTEN and TAWANA PATINA REID, individually and as Co-Administrators of the Estate of Z.W. Jr., a Deceased Minor,<br>　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>THE BOPPY COMPANY, LLC;<br>WALMART INC.;<br>ARTSANA U.S.A., INC. d/b/a CHICCO;<br>ARTSANA S.P.A. d/b/a ARTSANA GROUP;<br>ABC COMPANIES I-X; and<br>JOHN DOES I-X,<br>　　　　　　　　Defendants. | CIVIL ACTION<br>NO. 22-4341 |

Scott, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　August 14, 2023

## MEMORANDUM OPINION

　　Plaintiffs Zaleiph Wooten and Tawana Patina Reid filed a products liability lawsuit in the Philadelphia County Court of Common Pleas, alleging that a defective Boppy Original Newborn Lounger caused the death by asphyxiation of their newborn son, Z.W. Jr. Defendant Walmart Inc. ("Walmart") removed the action to federal court, and Defendant The Boppy Company ("Boppy") joined Walmart in the removal. Mr. Wooten and Ms. Reid moved to remand the action back to state court. The parties agree that one of the defendants—Artsana U.S.A., Inc., d/b/a Chicco ("Artsana U.S.A.")—is a Pennsylvania citizen. The parties acknowledge that the forum defendant rule, codified at 28 U.S.C. § 1441(b)(2), normally prevents the removal of a matter filed in Pennsylvania state court on the basis of diversity jurisdiction if one of the defendants is a citizen of Pennsylvania. But the defendants contest that Artsana U.S.A.'s citizenship can be ignored because Artsana U.S.A. is fraudulently joined and a nominal party to this action. I find that Artsana U.S.A. is neither fraudulently joined nor a nominal party, so I shall

1

remand this action. However, I will deny the plaintiffs' request for attorneys' fees and costs, because the defendants had an objectively reasonable basis for seeking removal.

## I. RELEVANT BACKGROUND

Mr. Wooten and Ms. Reid allege that they received a Boppy Original Newborn Lounger ("the Boppy lounger") as a gift through their Walmart Inc. baby gift registry. *See* Notice of Removal ("NOR"), Ex. A (Complaint), ¶ 19, ECF No. 1. Boppy loungers are padded pillow loungers for infants. *Id.* at ¶ 20. One day in October 2020, the plaintiffs placed Z.W. Jr. in the Boppy lounger, and sometime later, they found Z.W. Jr. to be nonresponsive.[1] Z.W. Jr. was pronounced dead at the hospital. *Id.* at ¶ 31.

Boppy Original Newborn Loungers were recalled on September 23, 2021, allegedly because infants could suffocate if they were placed into or rolled into certain positions on the loungers. *Id.* at ¶ 25. Mr. Wooten and Ms. Reid filed this lawsuit in their own capacities and as the co-administrators of their child's estate in the Philadelphia Court of Common Pleas on October 7, 2022. They allege that the Boppy lounger caused Z.W. Jr.'s death, and that the defendants should have known that Boppy Original Newborn Loungers posed risks of serious injury or death at the time of Z.W. Jr.'s death. *See id.* at ¶ 26.

The complaint raises several tort claims jointly and severally against a group of defendants: Walmart, Boppy, Artsana U.S.A., Artsana S.p.A. d/b/a Artsana Group ("Artsana S.p.A."), and various other companies and individuals with unknown names. The plaintiffs' tort claims include strict liability claims, breaches of express and implied warranties, and various negligence and fraud claims. *See id.* at ¶¶ 36-156.

---

[1] The October 2020 timeframe derives from Plaintiffs' Motion to Remand, 3, ECF No. 20.

Walmart removed the case to this court on October 28, 2022. *See* NOR, ECF No. 1. Boppy filed its consent to the removal on November 7, 2022. *See* Def. the Boppy Company, LLC's Notice of Removal and Consent to Def. Walmart Inc.'s Notice of Removal ("Boppy's Consent to NOR"), ECF No. 8. Mr. Wooten and Ms. Reid timely moved to remand this case back to the state court on November 23, 2022, and their motion requests attorneys' fees and costs of litigating the motion to remand. *See* Pls.' Mot. to Remand, ECF No. 20. On December 14, 2022, Boppy and Walmart filed responses in opposition to the plaintiffs' remand motion.[2] This matter was initially assigned to the Honorable Karen S. Marston, who heard oral argument regarding the plaintiffs' remand motion on January 18, 2023. This case was reassigned to this court on February 24, 2023.

## II.    ANALYSIS

The parties agree that complete diversity exists between the parties: The plaintiffs are citizens of Maryland; Walmart is a Delaware corporation with its principal place of business located in Arkansas; Boppy is a limited liability company whose members are citizens of Colorado; Artsana S.p.A. is a citizen of Italy; and Artsana U.S.A. is a New Jersey corporation with its principal place of business located in Pennsylvania. But the plaintiffs argue that the forum defendant rule prevents this action from being removable.[3] According to the forum

---

[2]   *See* Def. The Boppy Company, LLC's Resp. and Mem. of Law in Opp'n to Pls.' Mot. to Remand ("Boppy's Resp."), ECF No. 27; Def. Walmart Inc.'s Br. in Opp'n to Pls.' Mot. to Remand ("Walmart's Resp."), ECF No. 28.

Additionally, Walmart, Boppy, and Artsana S.p.A. have filed separate motions to dismiss. *See* Mots. to Dismiss, filed at ECF Nos. 5, 10, and 35, respectively. The plaintiffs' responses to these motions have been stayed until 14 days after the disposition of the motion to remand. *See* Orders, filed at ECF Nos. 17 and 37. Because this matter will be remanded, I do not need to address the pending motions to dismiss.

[3]   The plaintiffs also initially argued that Boppy's and Walmart's removal efforts were improper because Artsana U.S.A. did not consent to the removal. *See* Mot. to Remand, 5-7. The rule of unanimity, which is codified at 28 U.S.C. § 1446(b)(2)(A), requires that all defendants must join in or consent to

3

defendant rule, a civil action cannot be removed to federal court on the basis of diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Walmart and Boppy concede that Artsana U.S.A. is a Pennsylvania citizen, and this action was filed in Pennsylvania state court. Instead, they argue that Artsana U.S.A.'s citizenship should be ignored because it is (1) fraudulently joined and (2) a nominal party.

For the reasons that follow, Artsana U.S.A. is not fraudulently joined or a nominal party, and thus this case must be remanded to the Philadelphia Court of Common Pleas. However, the plaintiffs' request for attorneys' fees and costs for litigating the motion to remand is denied.

### A. Artsana U.S.A. is Not Fraudulently Joined

#### 1. Overview of Fraudulent Joinder

The doctrine of fraudulent joinder enables a defendant to remove a case from state court if the defendant can prove that any non-diverse defendant was joined solely to prevent removal to federal court. *See In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006). If the district court finds that a party was fraudulently joined, the court may disregard the party's citizenship, assume jurisdiction over the case, and dismiss the fraudulently joined party. *See id.* Fraudulent joinder occurs only if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Avenatti v. Fox News Network LLC*, 41 F.4th 125, 133 (3d Cir. 2022) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-52 (3d Cir. 1992)). Joinder is proper and remand is required "if there is even a possibility that a state court would find that

---

removal. However, the plaintiffs' counsel conceded at oral argument that if Artsana U.S.A. was fraudulently joined, then Artsana U.S.A. did not need to join in the motion, and if Artsana U.S.A. was not fraudulently joined, this matter will be remanded. *See* Tr. of Hearing on Mot. to Remand ("Tr."), 20-21. Thus, I decline to reach this argument.

the complaint states a cause of action against any one of the resident defendants." *See id.*

Because "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand," the party seeking removal "carries a heavy burden of persuasion" in establishing that a party has been fraudulently joined. *See In re Briscoe*, 448 F.3d at 217 (quoting *Batoff*, 977 F.2d at 851). Fraudulent joinder analysis is less probing than the standard of review for a Rule 12(b)(6) motion to dismiss or a summary judgment motion. *See Batoff*, 977 F.2d at 852 (finding that district court erred by applying heightened standard for motion to dismiss under Rule 12(b)(6) to issue of fraudulent joinder). [4]

The district court evaluates a fraudulent joinder claim by assuming that the complaint's factual allegations are true and resolving any uncertainties in controlling substantive law in the plaintiffs' favor. *See Batoff*, 977 F.2d at 852. The district court may "look beyond the pleadings" and conduct a limited review of "reliable evidence" proffered by the defendant to support removal. *See In re Briscoe*, 448 F.3d at 219-20. The court cannot, however, conduct a merits

---

[4] Walmart argues that district courts do not need to apply such an exacting standard to defendants' fraudulent joinder arguments if complete diversity exists between the parties and removal is defeated only by a diverse forum defendant. *See* Walmart's Response, 7-9. I will briefly address Walmart's arguments: First, the term "improper joinder" more clearly adheres to the language of § 1442(b)(2) than the term "fraudulent joinder," but that does not require the application of an "improper joinder" rule that is distinct from established fraudulent joinder doctrine: In practice, district courts that apply the standard applied in *Batoff* and its progeny are already applying an "improper joinder" analysis, even if we are using imperfect "fraudulent joinder" terminology—this standard does not require proof of fraudulent intent. Second, *Encompass Insurance Company v. Stone Mansion Restaurant Incorporated*, 902 F.3d 147 (3d Cir. 2018) (*Encompass*), does not require district courts to apply a different standard when plaintiffs properly invoke the forum defendant rule. *Encompass* held that a plaintiff could not invoke the forum defendant rule, even if a defendant was not "properly . . . served" due to the defendant's own gamesmanship, because the plain language in § 1441(b)(2) precludes removal only if an in-state defendant has been *properly joined and served*. *See id.* at 152-54. *Encompass* noted that the forum defendant rule is procedural (and thus waivable) rather than jurisdictional (and thus nonwaivable). *See id.* at 152. But *Encompass* did not hold or imply that district courts should apply a diluted fraudulent joinder standard in cases like this one, where the plaintiffs have properly invoked the forum defendant rule. Unless and until the Third Circuit squarely reaches this issue, I construe the law in favor of remand, and see no reason to apply a weaker improper joinder standard to non-diverse forum defendants. *See Boomerang Recoveries, LLC v. Guy Carpenter & Co., LLC*, 182 F. Supp. 3d 212, 217-18 (E.D. Pa. 2016) (noting that courts in the Eastern District of Pennsylvania have assumed that fraudulent joinder doctrine applies to a diverse forum defendant).

inquiry of a claim or defense. *Id.* at 218 (citing *Boyer*, 913 F.2d at 112-13).

District courts in the Eastern District of Pennsylvania have differed in their interpretations of what constitutes a limited review of reliable evidence beyond the pleadings. Although some district courts have pierced the pleadings to consider affidavits or declarations,[5] others have declined to credit apparently self-serving affidavits.[6] I adopt the workable rule that district courts may consider an affidavit that has not been tested through full discovery or prior litigation as evidence of fraudulent joiner only if that affidavit "presents *undisputed* facts that establish with complete certainty that the non-diverse defendant has no liability." *See Gaynor v. Marriott Hotel Serv., Inc.*, No. 13-3607, 2013 WL 4079652, at *5 (E.D. Pa. Aug. 13, 2013) (emphasis in original; internal quotations omitted); *Golon v. Haire Machine Corp.*, No. 18-1023, 2018 WL 3361049, at *2 (E.D. Pa. July 9, 2018).[7]

---

[5] *See, e.g., Susman v. Goodyear Tire & Rubber Co.*, No. 17-3521, 2018 WL 1243733 (E.D. Pa. Mar. 9, 2018); *Weaver v. Conrail, Inc.*, No. 09-5592, 2010 WL 2773382 (E.D. Pa. July 13, 2010).

[6] *See, e.g., Gaynor v. Marriott Hotel Services, Inc.*, No. 13-3607, 2013 WL 4079652, at *5 (E.D. Pa. Aug. 13, 2013) (declining to credit hotel manager's affidavit asserting that he was not involved in inspection, repair, or maintenance of sidewalk that allegedly cause plaintiff's injury); *Greenberg v. Macy's*, No. 11-4132, 2011 WL 4336674, at *5 (E.D. Pa. Sept. 15, 2011) (declining to credit affidavits from two defendants asserting that they had nothing to do with the creation of or failure to correct the allegedly hazardous condition that caused plaintiff's injury); *Golon v. Haire Machine Cop.*, No. 18-1023, 2018 WL 3361049, at *3 (E.D. Pa. July 9, 2018) (declining to credit affidavit from defendant's president that it was not involved in sale, supply, or installation of machine that caused plaintiff's injuries).

Relatedly, some district courts have permitted limited discovery on the issue of fraudulent joinder. *See, e.g., Thompson v. Kulicke Konecranes GMBH*, No. 11-5410, 2012 WL 3155579, at *3 (E.D. Pa. Aug. 3, 2012); *Reith v. Teva Pharms. USA, Inc.*, No. 18-3987, 2019 WL 1382624, at *3 (E.D. Pa. Mar. 27, 2019). Conversely, at least one court has observed that permitting discovery would exceed the limited bounds of fraudulent joinder analysis. *See The Knit With v. Aurora Yarns*, No. 09-5981, 2010 WL 844739, at *6 (E.D. Pa. Mar. 11, 2010) (rejecting defendants' request for limited discovery to determine a party's involvement because "[t]his argument completely misconstrues the breadth of the 'fraudulent joinder' inquiry"). Because the parties have not requested limited discovery here, I do not reach this issue.

[7] *See also Whitman v. Walmart Stores East, LP*, No. 21-3287, 2021 WL 4745069, at *5 (E.D. Pa. Oct. 12, 2021) (collecting cases and observing that "[o]ur Court has not always agreed on the weight to give such affidavits. . . . As a rule of thumb, however, courts give more credence to affidavits with uncontested assertions").

6

2. **Defendants have failed to prove that joinder of Artsana U.S.A. was fraudulent**

The plaintiffs' claims against Artsana U.S.A. have a reasonable factual basis if the plaintiffs are able to prove that Artsana U.S.A. was involved in the design, manufacture, marketing, or distribution of the Boppy lounger, and that the lounger's defects caused the death of Z.W. Jr. The plaintiffs correctly note that in products liability cases, "every 'seller' in the stream of commerce may be strictly liable to the plaintiff and hence common allegations may lie against multiple defendants." *See* Pls.' Mot. to Remand, 15 (citing Restatement (Second) of Torts § 402A). Additionally, Pennsylvania state courts have adopted what is sometimes referred to as the "apparent manufacturer doctrine":

> The Supreme Court of Pennsylvania has adopted Section 400 of the Restatement of Torts, which provides that one 'who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer.' *Forry v. Gulf Oil Corp.*, 237 A.2d 593, 599 (Pa. 1968) (quoting Restatement 2d, Torts § 400). Under Pennsylvania law, a producer who 'did not manufacture the product at issue and was not a supplier of the product participating in the chain of distribution [but] permit[ted] its name to appear on the equipment' can be held vicariously liable for the product. *Brandimarti v. Caterpiller Tractor Co.*, 527 A.2d 134, 139-40 (Pa. Super. 1987); *see also Forry*, 237 A.2d at 599 (holding that a defendant who 'had had its name embossed upon the casing' of the product at issue and put it 'out as its own' can be subject to vicarious liability).

*Smith v. NMC Wollard, Inc.*, No. 19-5101, 2020 WL 1975074, at *5 (E.D. Pa. Apr. 24, 2020); *See also Waters v. NMC-Wollard, Inc.*, No. 06-0032, 2007 WL 2668008, at *7 (E.D. Pa. Sept. 5, 2007).[8]

Here, the plaintiffs have produced evidence that (1) Artsana U.S.A. and Boppy are subsidiaries of the same parent company, Artsana S.p.A., and (2) Artsana U.S.A.'s "Chicco"

---

[8] Section 400 of the Second Restatement of Torts appears verbatim in the Third Restatement of Torts. *See* Restatement (Third) of Torts: Prod. Liab. § 14 (Am. L. Inst. 1998).

logo is clearly stamped right below Boppy's logo on the packaging of Boppy Original Newborn Loungers.[9] Defense counsel attempted at oral argument to minimize the presence of the "Chicco" logo on the packaging of Boppy Original Newborn Loungers as a mere "co-branding effort" by the subsidiaries' parent company.[10] This argument is unpersuasive, and defense counsel made no effort to supplement this argument with case law or support it with evidence. But even if the defendants had persuasively crafted the argument and supported it with evidence of the limitations of the co-branding agreement, that would at most illustrate a dispute of material fact as to Artsana U.S.A.'s possible liability for defective Boppy Original Newborn Loungers. It may turn out that the apparent manufacturer doctrine does not apply to Artsana U.S.A. in this case, but it cannot be said that the plaintiffs have no reasonable basis to support their products liability claims against Artsana U.S.A.—there is at least a possibility that a state court would find that the co-branding establishes Artsana U.S.A.'s liability.

Walmart and Boppy rely on two affidavits to support their fraudulent joinder arguments, but without the benefit of discovery, those affidavits (independently or combined) do not constitute reliable evidence, let alone evidence of undisputed facts that establish with complete

---

[9] The plaintiffs did not mention this in their initial filings, but after Boppy and Walmart sought to pierce the pleadings with evidence of fraudulent joinder, the plaintiffs submitted additional evidence to rebut Boppy and Walmart's evidence. *See* Not. of Filing of Additional Exs. In Supp. of Pls.' Mot. for Remand ("Pls.' Additional Exs."), Exs. A & B, ECF No. 31. At oral argument on the motion to remand, counsel for the plaintiffs stated that photographs of the packaging of a Boppy Original Newborn Lounger were not from the actual Boppy lounger that the plaintiffs possessed; that lounger was taken by police and subsequently lost. Instead, counsel tracked down one of the recalled devices from a secondary market. *See* Tr., 15-16. Plaintiffs' evidence of the parent-subsidiary relationship comes from a report published in 2020 by Artsana S.p.A., in which Artsana S.p.A. refers to itself as Artsana Group, and it lists "Chicco" and Boppy as two of its brands. *See* Pls.' Additional Exs., Ex. B, at 11.

[10] Boppy argued that the "Chicco" logo on the Boppy Original Newborn Lounger was "nothing more [than a] co-branding effort by a corporate umbrella, a big parent company, that no way reflects involvement of Chicco or Artsana in the design, development, manufacture or sale of any Boppy products". Tr. 26. Walmart further argued that Boppy and Artsana U.S.A. were clearly different corporations, and Artsana U.S.A.'s use of the trade name "Chicco" was irrelevant *See* Tr. 39-40, 43-45.

certainty that Artsana U.S.A. has no liability for defective Boppy Original Newborn Loungers.

First, in related litigation, Artsana U.S.A. submitted a notarized affidavit from its chief executive officer, Tom Gwiazdowski, that swore that Artsana U.S.A. "is not, and never has been, involved with the design . . . manufacture . . . sale . . . [and] marketing of the Boppy Original Newborn Lounger," and "[t]herefore, Artsana USA, Inc. d/b/a Chicco has no involvement in the alleged incident as plead in plaintiffs' Complaint." *See* NOR, Ex. D, ¶¶ 5-10. Mr. Gwiazdowski's affidavit is self-serving and makes sweeping claims without attaching any verifiable evidence that supports those claims; it is unclear how the plaintiffs would be able to rebut these claims without the benefit of discovery. Moreover, the defendants have cited no products liability case law that would require a court to summarily credit a chief executive officer's notarized affidavit that his company had nothing to do with the design, manufacture, sale, and marketing of a product that his company's logo is stamped on.[11]

Second, Walmart proffers an unnotarized affidavit from a senior merchant at Walmart, Paulo Araujo, who asserts that he has "knowledge and familiarity with Walmart's relationship with certain entities that supply products that Walmart sells." *See* NOR, Ex. E, ¶ 2. Mr. Araujo swears that "[f]ollowing a reasonable investigation, Artsana U.S.A., Inc. d/b/a Chicco did not supply the product known as the Boppy Original Newborn Lounger to Walmart," and that instead "The Boppy Company, LLC supplied a product known as the Boppy Original Newborn Lounger directly to Walmart for retail sale." *See id.* at ¶¶ 3-4. Walmart refuses to concede that it sold the Boppy lounger that the plaintiffs used. NOR, ¶ 27 ("Assuming *arguendo* that Walmart

---

[11] The defendants list several cases in which courts in this district have pierced the pleadings to consider defendants' additional evidence of fraudulent joinder, but none of the cases cited involved complex disputes that would have required the court to take a defendant's word alone as evidence that that defendant is not at all involved in the plaintiff's alleged injury. *See e.g.*, *Susman v. Goodyear Tire & Rubber Co.*, 2018 WL 1243733; *Weaver v. Conrail, Inc.*, No. 09-5592, 2010 WL 2773382 (E.D. Pa. July 13, 2010).

9

sold the Product, which it does not concede, Walmart did not purchase the Product from Artsana U.S.A."). The methodology and scope of Mr. Araujo's "reasonable investigation" are unclear. But even if Mr. Araujo's affidavit is true, it does not negate the possibility of Artsana U.S.A.'s liability under the apparent manufacturer doctrine.

Additionally, all of the parties refer to related pending state court cases involving allegedly defective Boppy products: *Rouh v. The Boppy Company*, which is filed in both the Philadelphia Court of Common Pleas and the Camden County Superior Court of New Jersey,[12] and *Martinez v. The Boppy Company*, which is filed in the Philadelphia Court of Common Pleas.[13] *Rouh* and *Martinez* are similar to this case in that the plaintiffs have all retained the same lead counsel, and Boppy, Artsana U.S.A., and Artsana S.p.A. are all joined as defendants.[14] *See* Boppy's Consent to Removal, ¶17; Pls' Mot. to Remand, 3 n.1. At the time that Mr. Wooten and Ms. Reid filed the instant motion to remand, *Rouh* and *Martinez* had been pending for about 11 months and 9 months, respectively, both *Rouh* and *Martinez* appeared to be in jurisdictional discovery phases, and Artsana U.S.A. had not been dismissed from either action as a party. *See id.* at Exs. A & B. At oral argument on the motion to remand, the plaintiffs' counsel noted that the discovery that had occurred in *Rouh* and *Martinez* had been limited to jurisdictional

---

[12] *Rouh v. The Boppy Co., LLC*, Case I.D. No. 2112033198 (Phila. Ct. Com. Pl., filed Dec. 16, 2021); *Rouh v. The Boppy Co., LLC*, CAM-L-003965-21 (N.J. Super. Ct. Law Div., filed Dec. 16, 2021).

[13] *Martinez v. The Boppy Co., LLC*, Case I.D. No. 220200605 (Phila. Ct. Com. Pl., filed Feb. 4, 2022). Boppy accurately points out that the *Martinez* case involves an allegedly defective "Boppy Feeding and Infant Support Pillow" and not a Boppy Original Newborn Lounger. *See* Boppy's Response, 10 n.2. However, the plaintiffs do not reference *Martinez* to make any arguments specific to the Boppy Original Newborn Lounger, and Boppy does not explain why the distinction would make it proper to join Artsana U.S.A. as a party in *Martinez* but not in this case.

[14] The retailer defendants apparently differ in each lawsuit: here, it is Walmart; in *Rouh*, it is Target Corporation; and in *Martinez*, it is Burlington Coat Factory of New Jersey LLC. *See* Pls.' Mot. to Remand, Exs. A & B.

discovery and did not reach the issue of Artsana U.S.A.'s involvement or liability. *See* Tr. 47-48. Boppy and Walmart did not contradict this assertion, and no party has notified this court of any further developments in those cases. Thus, at this point, it can be inferred that after more than one year of litigation in these related lawsuits, Artsana U.S.A. has not been able to prove its non-involvement with Boppy lounger products.

Although it is too early in the *Rouh* and *Martinez* litigation to learn anything about Artsana U.S.A.'s connection (or lack thereof) to Boppy lounger products, these similar cases reflect the good faith efforts of plaintiffs' counsel to fully prosecute any claims against Artsana U.S.A. The plaintiffs persuasively argue that together, *Rouh*, *Martinez*, and this case reflect their counsel's litigation strategy of joining Artsana U.S.A. in several products liability lawsuits involving Boppy products.[15]

Considering the pleadings and the information presented beyond the pleadings, the defendants have not carried their heavy burden of proving that Chicco was fraudulently joined: Walmart and Boppy have not shown either that there is no reasonable basis in fact for the plaintiffs' claims of Artsana U.S.A.'s liability or that the plaintiffs have no real intention in good faith of pursuing its claims against Artsana U.S.A.

B. **Artsana U.S.A. is Not a Nominal Party**

Additionally, Boppy summarily argues that Artsana U.S.A.'s citizenship can be disregarded because it is merely a nominal party in this action. *See* Boppy's Consent to NOR, ¶¶

---

[15] The plaintiffs' counsel chose to join Artsana U.S.A. even in *Martinez*, where the joinder of Artsana U.S.A. allegedly had no impact on diversity jurisdiction. *See* Pls.' Mot. to Remand, 3-4 n.1. Although the plaintiffs do not detail why there was no issue with diversity jurisdiction, based on a cursory review of the *Martinez* docket, the plaintiffs and Defendant Burlington Coat Factory of New Jersey LLC all have New Jersey addresses. *See id.* at Ex. B, at 3-4. The plaintiffs also note that the time for removal had passed in *Rouh*, and the plaintiffs there had never dismissed Artsana U.S.A. afterward. *See id.* at 11-12.

22-23; Boppy's Resp., 18 (forwarding identical nominal party arguments).

"[A] federal court must disregard nominal or formal parties, and can base its jurisdiction only upon the citizenship of parties with a real interest in the litigation." *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 358 (3d Cir. 2013) (internal citations and quotations omitted); *see also Walsh v. Defenders*, 894 F.3d 583, 589-91 (3d Cir. 2018). Several cases have defined a "nominal party" as a party that lacks a real interest in the litigation. *See id.* at 359.

Boppy's nominal party argument forwards no additional grounds as to why Artsana U.S.A. could be classified as a nominal party; this argument appears to be coextensive with its fraudulent joinder argument. I see no reason to find that Artsana is a nominal party in this litigation. *Cf. Johnson*, 724 F.3d at 358-59 (affirming district court's finding that defendant was merely nominal party because that defendant had dissolved and another defendant had assumed the nominal defendant's debts, liabilities, and duties).

### C. The Plaintiffs' Request for Attorneys' Fees and Costs is Denied

Finally, the plaintiffs have requested attorneys' fees and costs associated with litigating their motion to remand. *See* Mot. to Remand, 20. According to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The United States Supreme Court has held that district courts should deny such requests for attorneys' fees if the removing party had an objectively reasonable basis for seeking removal, unless the court finds that unusual circumstances exist. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). In evaluating requests for fees under § 1447(c), courts should consider the value of deterring removals sought to prolong litigation or impose burdensome litigation costs, but courts should not undermine Congress's decision to afford litigants a right to removal when statutory criteria are satisfied. *See*

12

*id.* at 140.

Although the plaintiffs prevail in their efforts to remand this case to state court, I cannot conclude as a matter of law that Walmart and Boppy lacked an objectively reasonable basis for seeking removal and opposing the plaintiffs' motion to remand. No United States Supreme Court or Third Circuit precedent explicitly forecloses defendants from making the arguments raised here. The defendants have cited several cases in which district courts have pierced the pleadings and credited affidavits and other documents purporting to show that defendants were not involved in litigation or were not liable. As a practical matter, it was appropriate for the defendants to rely upon cases decided in the Eastern District of Pennsylvania to support removal: Since district court decisions regarding motions to remand are rarely immediately appealable, the Third Circuit has not had many occasions to reach this issue. Those district court cases were not ultimately persuasive here, but it was not unreasonable for the defendants to rely on them.

Furthermore, nothing indicates that the defendants sought removal to simply prolong litigation or impose burdensome litigation costs upon the plaintiffs: It is evident that defense counsel (and plaintiffs' counsel) devoted considerable effort and care to this phase of litigation. Notably, both Boppy and Walmart then filed motions to dismiss or, in the alternative, to transfer venue. *See* Def. Walmart Inc's Mot. to Dismiss, ECF No. 5; Def. The Boppy Co., LLC's Mot. to Dismiss, ECF No. 10. Thus, it seems that the defendants' motivation for removal is to move the litigation to forums that they deem more desirable, rather than for any obviously dilatory purpose.

For these reasons, the plaintiffs' request for attorneys' fees and costs under 28 U.S.C. § 1447(c) is denied.

IV. **CONCLUSION**

Because Artsana U.S.A. is a Pennsylvania citizen, the removal of this case violates the forum defendant rule. Because Artsana U.S.A. was not fraudulently joined and is not a nominal party in this action, I am not persuaded that I can ignore Artsana U.S.A.'s citizenship and assert diversity jurisdiction. Therefore, I remand the case for lack of subject matter jurisdiction. However, I deny the plaintiffs' request for attorneys' fees and costs of litigating their motion to remand, because Walmart and Boppy had an objectively reasonable basis for seeking removal and did not apparently engineer removal to prolong litigation or create unnecessary litigation costs.

BY THE COURT:

_____
HON. KAI N. SCOTT
United States District Court Judge